FILED

2024 Sep-18  AM 11:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY BURKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Case No.:  2:23-cv-01045-JHE |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION[1]

Plaintiff Anthony Burks ("Burks") seeks review, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his applications for Supplemental Security Income ("SSI") and for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Burks timely pursued and exhausted his administrative remedies.  This case is therefore ripe for review under 42 U.S.C. § 405(g).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On December 16, 2020, Burks filed an application for a period of disability and DIB.  (Tr. 22).  The same day, he protectively filed an application for SSI.  (*Id.*).  In both applications, Burks alleged disability beginning on September 3, 2019.  (*Id.*).  The Commissioner denied Burks' claims on September 13, 2021, and denied them again upon reconsideration on December 20, 2021.  (*Id.*).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 9).

Burks timely requested a hearing before an Administrative Law Judge ("ALJ").  Following a hearing on January 4, 2023, the ALJ denied Burks' applications in an unfavorable decision dated January 18, 2023.  (Tr. 19–40).  Burks sought review by the Appeals Council, but it denied his request on June 12, 2023.  (Tr. 1–6).  On that date, the ALJ's decision became the final decision of the Commissioner.  On August 8, 2023, Burks initiated this action.  (Doc. 1).

Burks was forty-one years old on his alleged onset date.  (Tr. 33).  Burks has past relevant work as a welder, lumber loader, septic tank servicer, and lawn service worker.  (*Id.*).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

(2) whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the SSA;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Burks had not engaged in substantial gainful activity since his alleged onset date. (Tr. 24). At Step Two, the ALJ found that Burks has the following severe impairments: degenerative disc disease ("DDD"), emphysema, chronic pain, and depression. (Tr. 25). At Step Three, the ALJ found that Burks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 25–27).

Before proceeding to Step Four, the ALJ determined Burks' residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Burks has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting and carrying ten pounds occasionally, less than ten pounds frequently; could sit for six hours; stand or walk for two hours; has manipulative restrictions such that they could finger and feel on a frequent basis with the left hand; could climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolding; could balance, stoop, kneel, crouch, and crawl occasionally; should never work at unprotected heights, never moving mechanical parts; could be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, in extreme cold, and in extreme heat on an occasional basis; would be able to understand, remember and carry out simple instructions, but not detailed ones; could have occasional contact

4

with coworkers, supervisors and the general public; and only tolerate infrequent changes to the workplace.

(Tr. 27).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Burks is unable to perform his past relevant work.  (Tr. 33).  At Step Five, the ALJ found that, considering Burks' age, education, work experience, and RFC, Burks is able to perform jobs that exist in significant numbers in the national economy.  (Tr. 33–34).  Therefore, the ALJ determined Burks had not been under a disability from his alleged onset date through the date of the decision and denied his claim.  (Tr. 34).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]."  *Id.* (citation omitted).

Burks appears to raise two arguments supporting reversal and remand.  First, Burks argues that the ALJ erred by failing to account for his FEV1 test results and emphysema.  (Doc. 13 at 15–17).  Second, Burks asserts that the ALJ inappropriately dismissed his pain testimony concerning his neck problems, pinched nerve, and shoulder and hand numbness.  (*Id.* at 17–18).

### A. The ALJ Did Not Err in Evaluating Burks' FEV1 Report

Burks' first argument is that the ALJ "erred in failing to consider or account for [his] FEV1 test results and emphysema in her decision." (Doc. 13 at 15).  The FEV1 measurement is part of Burks' pulmonary function test ("PFT") generated on August 11, 2022.  (Tr. 556–61).  As Burks describes it, the FEV1 test "involves forcefully breathing out through a mouthpiece connected to a spirometer machine."  (Doc. 13 at 15).  Burks' results were 51% unaided and 67% with a bronchodilator.[4]  (Tr. 557).  Burks cites the COPD GOLD guidelines from 2018 to demonstrate that his results "appear to put [him] in the severe or borderline severe stage of lung function." (Doc. 13 at 15–16) (citing https://www.healthline.com for the proposition that FEV1 results of greater than 80% are mild, between 60% and 97% are moderate, and below 60% are severe).

There are two problems with Burks' argument.  First, the ALJ had no obligation under the regulations to discuss specific pieces of medical evidence.  It is true that an ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(b).  The relevant regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in one or more of a

---

[4] In a footnote, Burks states that the medical provider misstated the results of the FEV1 test in a checklist at the end of the exhibit containing the PFT results, indicating that Burks' results were 70% or greater post-bronchodilator.  (Doc. 13 at 17 n.1).  Burks argues that "if these entries are unclear the ALJ should have re-contacted this medical source for additional information." (*Id.*).  To the extent that Burks intends this as a separate argument, a footnote is not an appropriate way to raise a substantive argument.  *Cf. U.S. Sec. & Exchange Comm'n v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 812 (11th Cir. 2015) (a litigant's "fleeting footnote explaining" an argument to the district court "in one sentence . . . is insufficient to properly assert a claim on appeal").  In any case, the FEV1 results are what they are.  Burks provides no reason to conclude that an incorrect *synopsis* of the results would render the results themselves unclear or that the ALJ relied on the misstatement rather than the results.

variety of abilities, 20 C.F.R. § 404.1513(a)(2).  By contrast, a test like the FEV1 is "objective medical evidence" under the regulations.  *See* § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both . . . .").  There is no obligation under the regulations to discuss each individual piece of objective medical evidence.  The only authority Burks musters for such an obligation is *Mercer v. Comm'r,* 2019 WL 1433762 at *4 (N.D. Ala. March 29, 2019), a previous decision by the undersigned which Burks cites for the proposition that "[i]t is the ALJ's job to discuss all relevant medical evidence and to explain the weight that he affords it."  (Doc. 13 at 17) (citing *See*)).  In *Mercer*, the undersigned reversed a decision denying benefits on the basis that the ALJ misevaluated *opinion* evidence, which is consistent with § 404.1520c.[5]  *Mercer* says nothing about an ALJ's obligation to discuss "all relevant medical *evidence*" and assign weight to it.  Burks cannot simply rely on the ALJ's failure to specifically discuss the August 2022 PFT as a basis for reversible error.

Second, Burks does not indicate in any way what functional limitations the FEV1 test supports that are inconsistent with the RFC.  "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient [to show the severity of an impairment]; instead, the claimant must show the effect of the impairment on her ability to work."  *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)).  The FEV1 results might support at Step Two that

---

[5] The undersigned decided *Mercer* under a standard that is no longer applicable.  *See* 2019 WL 1433762 at *4 (applying the formerly-controlling "treating physician rule" under 20 C.F.R. § 404.1527(c)); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (holding that 20 C.F.R. § 404.1520c, which eliminated the treating physician rule as a regulatory matter, abrogated the use of the rule in this Circuit).  That said, nothing in the new regulation changed an ALJ's obligation to evaluate each medical opinion.

emphysema was one of Burks' severe impairments, but the ALJ concluded exactly that.[6]  (Tr. 25).  They do not independently support any degree of limitation, and Burks does not connect them to any specific functional limitation he argues should be included in the RFC.[7]

The closest Burks comes to doing so is his discussion of the August 15, 2022 opinion of consultative examiner Dr. Dallas M. Russell.  (Doc. 13 at 18–20).  Dr. Russell reviewed portions of Burks' medical history, noting that "[h]e has COPD which has been documented with PFTs before."  (Tr. 572).  Dr. Russell stated that Burks "had PFTs done 2 days ago but the results of those are unavailable."  (*Id.*).  Burks contends that "the findings made by Dr. Russell as to [Burks'] residual functional capacity might be different" if he had the benefit of the FEV1 results.  (Doc. 13 at 19).  This is pure speculation, particularly since Dr. Russell diagnosed Burks with "COPD with shortness of breath, dyspnea on exertion" and imposed exertional requirements even without the FEV1 results (tr. 564–69, 573).  Burks has simply not established that the ALJ erred in her evaluation of the FEV1 results.[8]

### B. The ALJ Appropriately Considered Burks' Pain Testimony

Burks' second argument is a single paragraph asserting that the ALJ erred in considering his testimony about his limitations.  (Doc. 13 at 17–18).  The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his

---

[6] It is not entirely clear whether Burks argues that the FEV1 test supports COPD as a separate severe impairment, but emphysema is a type of COPD.  National Library of Medicine, *Emphysema*, https://medlineplus.gov/emphysema.html (last visited July 24, 2024).

[7] Burks presumably connects the FEV1 result to his claim that he "los[es] his breath easily upon exertion" (doc. 13 at 17), but it is not clear how Burks contends this should have been addressed in the RFC.  The undersigned discusses this below in the context of Burks' argument concerning how the ALJ assessed his subjective reports.

[8] Burks does not appear to take issue with how the ALJ evaluated Dr. Russell's opinion as a general matter.

or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561–62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029 at *3–10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3)–(4); SSR 16-3p, 2016 WL 1119029 at *3–10. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla.

9

Feb. 25, 2011).  *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

Burks asserts that he "los[es] his breath easily upon exertion . . . [and] suffers from cervical neck problems, a pinched nerve in his fingers, and a left hand that goes completely numb."  (*Id.* at 17) (citing tr. 60–61).  Burks highlights portions of his testimony showing that: his neck feels like "bone on bone" due to the pinched nerve (*id.*) (citing tr. 63); his left shoulder has been numb for two years and he can do little with his left hand (*id.*) (citing tr. 64); he can feel with the fingertips of his right hand, but his left hand stays numb (*id.* at 17–18) (citing tr. 67); his wife has to help him dry off after showers and dress, he has daily pain of 9 out of 10, and he stays propped up on the couch or bed almost all day, every day (*id.* at 18) (citing tr. 69); his pain sometimes "lays him up" for two days, during which he can barely get up to go to the bathroom, and he has five or six days per month in which he does not get out of bed (*id.*) (citing tr. 71).

Contrary to Burks' assertion, there is substantial evidence supporting the ALJ's conclusion that while Burks' "medically determinable impairments could reasonably be expected to cause some symptoms and functional limitations," Burks' "statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record" (tr. 28).  First, the ALJ highlighted multiple treatment records supporting some limitations short of what Burks claimed.  The ALJ pointed to Burks' January 2019 visit to Christ Health Center after he pulled his left shoulder out of its socket.  (Tr. 28–29, 421–22).  While the examination showed a limited range of motion in the shoulder, subsequent x-rays revealed no fracture or dislocation, but some mild degenerative changes.  (Tr. 29, 421–22, 442).  The ALJ also cited a March 2020 visit to Warrior Medical Associates, at which

a musculoskeletal examination revealed tenderness about the left ankle and bilateral shoulders, but no new or worsened weakness, wasting, fasciculations, arthritis, or muscle pain. (Tr. 29, 489–93). The ALJ noted multiple visits to Warrior Medical Associates at which Burks had relatively normal respiratory reports and findings. (Tr. 29–30) (citing tr. 494–97 (December 2019, finding "clear lungs to auscultation bilaterally without wheezing"), 471–74 (April 2021, Burks reported "no significant shortness of breath beyond baseline," finding on examination "clear lungs to auscultation bilaterally without wheezing"), 551–55 (January 2022, same)).

Second, the ALJ cited opinion evidence undermining Burks' subjective complaints. The ALJ pointed to Dr. Russell's July 2021 examination, during which Dr. Russell found Burks had no trouble getting on and off the examination table but had a somewhat slow gait with a limp favoring his left leg. (Tr. 29, 520). Dr. Russell found Burks had very mild weakness of the left upper extremity, mild weakness of the left lower extremity, but still had normal dexterity and range of motion in all of his extremities except his left shoulder, left ankle, and spine. (Tr. 29, 520). Imaging of Burks' cervical spine showed mild cervical spondyloarthropathy. (Tr. 29, 516). The ALJ also cited Dr. Russell's August 2022 consultative examination, during which he found Burks had "5/5 muscle strength, 5/5 grip strength, diminished sensation broadly in the left arm as compared to the right, intact fine motor skills, but limited overhead and forward reaching on the left." (Tr. 30, 573). Dr. Russell again found Burks had normal dexterity and normal range of motion in all of his extremities except his left shoulder, left ankle, and spine. (*Id.*). The ALJ partially credited Dr. Russell's RFC imposing (among other things) exertional restrictions and limitations in the use of Burks' left hand.[9]

_____

[9] Notably, the ALJ rejected the opinions of two other physicians that Burks was capable of

Finally, the ALJ relied on Burks' reported activities of daily living.  At the hearing, Burks testified that he could grip a coffee cup in either hand, could pick up items with his right (but not left) hand, could occasionally drive and run errands, could walk up stairs with a hand rail, and could play with his grandchild.  (Tr. 30, 66–68).  The ALJ was entitled to consider these activities in the context of Burks' subjective testimony.  See SSR 96–8p, 1996 WL 374184 at *5 (July 2, 1996); SSR 16–3p, 2017 WL 5180304 at *7 (Oct. 25, 2017); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).  While the specific activities Burks reported do not provide a great deal of evidence to undermine Burks' testimony, they do provide *some* evidence.

Notably, Burks does not specifically take issue with *any* of the evidence cited above.  While there might be other evidence in the record that would support Burks' testimony (although he identifies none), all of this provides substantial evidence to find that Burks has limitations short of what his testimony might otherwise support.  Burks has not shown that the ALJ erred in discounting his pain testimony.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Burks' claims for SSI, a period of disability, and DIB is **AFFIRMED**.  A separate order will be entered.

DONE this 18th day of September, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

_____

performing work at the light exertional level, finding them to be inconsistent with the record evidence supporting that Burks could work only at the sedentary exertional level.  (Tr. 31).